In the District Court of the United States
For the District of South Carolina

BEAUFORT DIVISION

| | |
|---|---|
| Charles A. Cocklin, #237667,       ) | |
|            ) | Civil Action No. 9:06-1475-PMD-GCK |
|           Petitioner,    ) | |
|            ) | |
| vs.            ) | |
|            ) | **REPORT AND RECOMMENDATION** |
| George T. Hagan, Warden; and    ) | **OF THE MAGISTRATE JUDGE** |
| Henry McMaster, Attorney General    ) | |
| of the State of South Carolina,    ) | |
|            ) | |
|           Respondents.    ) | |

## I.  INTRODUCTION

The Petitioner, Charles A. Cocklin ("Petitioner" or "Cocklin"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code Section 2254. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Respondents and the Petitioner have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been

made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.    PROCEDURAL HISTORY IN STATE COURT

### A.  Proceedings in the Court of General Sessions

During the October 2000 term of the Court of General Sessions for Fairfield County, the grand jury returned six indictments, representing four separate incidences.  Cocklin was charged with two counts of burglary in the first degree, two counts of burglary in the second degree (dwelling) and two counts of grand larceny.  (App 7-9)

A trial was held in Winnsboro, South Carolina on April 16-18, 2001 before the Honorable Donald W. Beatty, Circuit Court Judge, and a jury.  Cocklin was tried on two charges (burglary in the second degree, and grand larceny) which had occurred on or about May 18, 2000 (00-GS-20-462 and 00-GS-20-463).  (App. 550-553)  Cocklin was represented by John Fantry, Esquire.  The State was represented by Senior Assistant Solicitor Michael Hemlepp.  A number of persons, including Cocklin, testified.  On April 18, 2001, the jury found Cocklin guilty of both charges.  (App. 487-488)  On April 19, 2001, Judge Beatty sentenced Cocklin to confinement for fifteen (15) years for second degree burglary with credit for time served, and thirty (30) days for petit larceny, again with credit for time served.[1]  (App. 328; 477-478)

### B.  Cocklin's Direct Appeal

Cocklin filed a timely notice of appeal before the South Carolina Supreme Court and an *Anders*[2] Brief of Appellant was filed by Assistant Appellate Defender Robert M. Pachak of

---

[1]    The indictment for grand larceny alleged that the property was valued at more than $200.00. The statute was changed after that form was used.  The attorneys and the trial judge agreed that there was a jurisdictional problem with the indictment and the judge changed to the charge to petit larceny with the consent of defense counsel, who waived presentment.  (App. 485-486)

[2]    *Anders v. California*, 386 U.S. 738 (1967).  *Anders* requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited.  *See Anders*, 386 U.S. at 744.  *See also Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988).

the South Carolina Office of Appellate Defense on February 13, 2002. Cocklin's counsel

raised one issue for review:

> Whether the trial court erred in allowing appellant to be impeached with prior grand larceny convictions when they were too similar to the grand larceny charge for which appellant was on trial and they caused the probative value of the prior convictions to be outweighed by their prejudicial effect.

Thereafter, on March 21, 2002, Cocklin filed a *pro se* brief, in which he raised two

issues for review:

> Whether the trial court erred in admitting evidence relating to blood swab samples recovered from the crime scene and results of DNA analysis conducted when the chain of custody of the evidence was incomplete?
>
> Whether the trial court erred in admitting evidence seized from Appellant's vehicle when there was no reasonable suspicion for the initial stop and no probable cause existed to search Appellant's vehicle?

On September 12, 2002, the South Carolina Court of Appeals dismissed Cocklin's

appeal pursuant to *Anders v. California* and *State v. Williams,* and granted Counsel's petition

to be relieved in the matter. *See State v. Cocklin,* Op. No. 2002-UP-556) (Ct. App. Filed

September 12, 2002) (*per curiam).* The Order of Remittitur was sent to the trial court on

October 22, 2002.

### C.  Cocklin's Application for Post-Conviction Relief

The Petitioner timely filed an application for post-conviction relief ("APCR") on

October 4, 2002.  (App. 491-502)  Petitioner raised the following general ground for relief:

>   1.    ineffective assistance of trial counsel.

First, Petitioner argued that trial counsel was constitutionally ineffective and caused

him prejudice, and denied him a fair trial because his counsel failed to act appropriately

during voir dire.  Petitioner claims trial counsel was ineffective when he did not ask the court

to strike the entire jury panel after one potential juror stated during voir dire: "I believe this is

the gentleman who broke into my mother's house."  Next, Petitioner contends that counsel

should have questioned the jury panel as to whether any one had read the newspaper articles that had been published about him.  In addition, counsel should have questioned the jurors about whether they had seen any information that Petitioner's former attorney had put on the Internet about him.

Second, counsel was ineffective during jury selection by not striking jurors whom Petitioner felt were biased towards the prosecution, which denied Petitioner the right to a trial by a fair and impartial jury.

Third, counsel presented an ineffective argument to the court with respect to his motion to suppress evidence from the initial stop and search of Petitioner and the automobile in which he was driving because evidence was illegally obtained without a search warrant. (App. 498)

Fourth, counsel was ineffective in his argument to the court regarding to suppress the blood swab evidence taken at the scene of the crime based on the lack of proof of a proper chain of custody, and a blood sample taken from Petitioner.  (App. 499)

Fifth, counsel was ineffective in failing to invoke Rule 5(a)(1)(d) to request and acquire all DNA proficiency test results of SLED Agent Ortuno, who testified at trial.  Had those proficiency test results been obtained by counsel, Agent Ortuno could have been cross-examined as to his performance on those proficiency tests.  (App. 499)

Sixth, counsel was ineffective when he failed to object to testimony that Petitioner initially refused to consent to giving a blood sample without his attorney being present; Petitioner only gave a blood sample after a court order had been obtained.[3]

Lastly, counsel was ineffective in failing to present Nancy Mosby, Petitioner's girlfriend at the time, as an alibi witness.  (App. 496-502)

---

[3]    This evidence was important to the case because Cocklin's DNA matched a bloodstain found at the crime scene.  (App. 132, lines 16-20 *and* App. 295, lines 20-23).

An evidentiary hearing was held on September 10, 2003, before the Honorable Kenneth G. Goode at the Fairfield County Courthouse in Winnsboro.  (App. 503-543)  The Petitioner was present and was represented by T. Andrew Johnson, Esquire.  The State of South Carolina was represented by Allen Bullard, Assistant Attorney General for the State. During the evidentiary hearing, testimony was received from the Petitioner, from the Petitioner's former girlfriend, Nancy Mosby, and from John Fantry, who testified on behalf of the State.[4]  The court also had before it a copy of the APCR, the Respondent's return, the trial transcript, the records of the Fairfield County clerk of court, the appellate briefs, the appellate court opinion, and the Petitioner's records from the SCDC.

On September 29, 2003 Judge Goode entered his written Order of Dismissal denying relief in the matter.  (App. 544-549)

On April 21, 2004, the Petitioner, through his counsel, Assistant Appellate Defender Joseph L. Savitz, appealed to the South Carolina Supreme Court from the denial of PCR by filing a Petition for Writ of Certiorari.  In the Petition, Mr. Savitz asserted one ground for relief:

> Defense counsel failed to provide effective assistance under *Strickland v. Washington* when he neglected to object to testimony that Cocklin had initially refused to provide the police with a blood sample because he "wanted to talk to his attorney first."

The Respondents filed a return on September 7, 2004.  On March 28, 2006, the South Carolina Court of Appeals entered a letter order stating:  "Petition for Writ of Certiorari Denied."  The mandate was issued on April 14, 2006.  No petition for rehearing in the court of appeals or petition for writ of certiorari to the South Carolina Supreme Court was taken.

---

[4]     It appears that Petitioner added another claim of ineffective assistance of counsel at the hearing, which was that counsel had failed to impeach the credibility of the chief investigator on his case, Mr. Donnie Anderson.  (App. 519)

# IV.  FEDERAL COURT HISTORY

## A.  Cocklin's Petition for a Writ of Habeas Corpus

Cocklin is presently confined to the Allendale Correctional Institution ("ACI") of the South Carolina Department of Corrections ("SCDC").  Cocklin filed this Petition for a writ of *habeas corpus* (the "Petition") on May 11, 2006 against George T. Hagan, Warden of ACI, and Henry McMaster, the Attorney General of the State of South Carolina (collectively, the "Respondents").[5]  [1-1].  The Petition set forth four (4) grounds for relief, which are included in their entirety below:

**Ground One:**   Whether the trial court erred in admitting evidence relating to blood swab samples recovered from the crime scene and results of DNA analysis when the CHAIN OF CUSTODY of the evidence was incomplete.

Supporting Facts:        On May 18, 2000 Investigator Maggie Boyd collected a sample of blood from a crime scene.  She put the evidence in her desk drawer; never turning it into the Department's evidence officer or going through the evidence invoice procedure.  On Oct. 25, 2000 Investigator Boyd turned the blood swabs over to Investigator Greg Boney who also kept these blood swabs in his desk.  On November 4, 2000 a blood sample was taken from Appellant and retained in the custody of Investigator Donnie Anderson who stated that the sample was kept in a unsecured refrigerator.  The blood swabs in this case were gathered on May 18, 2000 and were placed in a desk drawer until Nov. 7, 2000.  The blood sample was drawn Nov. 4, 2000 and was placed in a refrigerator until Nov. 7, 2000.  Anyone could have gained access to this evidence.

**Ground Two:**        Whether the trial court erred in admitting evidence seized from Petitioner's vehicle when there was no reasonable suspicion for initial stop and no probable cause existed to search Petitioner's vehicle.

Supporting facts:        On June 2, 2000 at approximate 8:15 a.m. the Fairfield County Sheriff Office received a call from Winnsboro, S.C. resident Tony Ashworth.  Law enforcement responded to the scene at approx. 8:40 a.m. and were told by Mr. Ashworth that when he returned home that a newer model Black Ford was parked in his driveway.  He stated he saw a young black male approx 20-25 years old jump from the roof of his resident [sic] got into the vehicle and left.  He stated that the subject was wearing a black long shirt and dark colored pants

---

[5]        Cocklin has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.

and that subject was about 6'1" tall and weighed (200) pounds or more.  Law Enforcement officers at the scene issued a Bolo based on this.  Based on the above information and approx two (2) hours later Petitioner was stopped by law enforcement.  Petitioner provided his driver's license and was removed from the vehicle and a "pat down" search of his person was made.  Petitioner was handcuffed and arrested.  There was no attempt to make an identification of Petitioner as the person that was seen by Mr. Ashworth although no weapons, contraband, or any other incriminating or suspicious evidence of any kind was found during the "Pat Down" and no items were missing from the Ashworth residence.  Petitioner's vehicle was searched including the glove compartment, and the trunk without warrant and without consent and items were seized.  The trial court committed reversible error in allowing the illegally seized items to be introduced into evidence when no reasonable basis supported the initial stop of Petitioner.

**Ground Three:**    Defense counsel failed to provide effective assistance under *Strickland v. Washington* when he neglected to object to testimony that Petitioner initially refused to provide police with a blood sample because he wanted his lawyer present.

Supporting facts:    During direct examination of Fairfield County Sheriff's Department Investigator Greg Boney, testimony was presented to the jury that Applicant refused to submit to the taking of a blood sample.  Investigator Boney testified that Applicant did not want to cooperate and that Petitioner wanted to talk to his attorney first and that a court order had to be obtain[ed].  Since the taking of a blood sample is a search of that person, the protections of the Federal Constitution applies.  Testimony presented to the jury that Applicant refused to cooperate violates the provisions established by the IV Amendment.  Counsel['s] failure to object to this testimony denied Petitioner's right to a fair trial.

**Ground Four:**    Petitioner denied "Due Process."

Supporting facts:    Petitioner asserts that he was stopped on June 2, 2000 approx. two (2) hours after an alleged crime was admitted simply because he was a black man driving a black car.  Petitioner declares that he was "Pat Down" and arrested without his *Miranda* rights being given to him and was interrogated by officers who threaten[ed] and tried to coerce him in to making a plea and that he had all his clothes taken from him without a warrant at the Detention Center.

On May 18, 2006, the undersigned issued an Order which authorized service on the Respondents and notified Cocklin of the change of address rule.  [4-1]  Thereafter, in response to Cocklin's Petition for *habeas corpus* relief, the Respondents filed a Return and

Memorandum of Law in Support of Motion for Summary Judgment (the "Return") on August 7, 2006.  [13-1; 14-1]

The undersigned issued an Order on August 8, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Cocklin of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary Judgment.[6]  [16-1]  On September 5, 2006, Cocklin filed a Motion for Summary Judgment, and a Motion in Opposition and a Memorandum of Law in Support of Motion for Summary Judgment.  [17-1; 18-1]

**B.  Application of the Antiterrorism and Effective Death Penalty Act of 1996**

Because Cocklin filed his Petition on May 11, 2006, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to this case.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  This Court's review of his collateral attack on his criminal conviction is governed by the parameters set forth in the AEDPA, which amended Section 2254.  As amended, Section 2254(d) provides that a federal court may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§ 2254(d)(1) & (2).

With respect to the first prong of the analysis under Section 2254(d), the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the

---

[6]    The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal *habeas corpus* cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (plurality opinion). An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-413. An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.). Yet as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied,* 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411. The Fourth Circuit has held that this application of federal law must be "objectively unreasonable." *Oken v. Corcoran*, 220 F.3d 259, 264 (4th Cir. 2000) (noting that the Supreme Court in *Williams* "adopted" the holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999) that the "unreasonable application" inquiry is an objective inquiry.).

Turning to Section 2254(d)(2), the proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). The federal courts must accord "considerable deference in their review of state

*habeas* proceedings." *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

In sum, the AEDPA, as amended, exalts the role that a state court's decision plays in a habeas decision by specifically directing the federal court to make the state court decision the starting point of federal review; only if that decision deviates from the paradigm recited in Section 2254(d) can a habeas court grant relief. *Smith v. Padula*, — F.Supp2d. —, 2006 WL 1341236 at *6 (D.S.C. May 11, 2006).

## C.  Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies:  "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).  Thus, if claims were never reviewed by the highest court in South Carolina, those claims will be barred and cannot be considered by the Court.

The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions.  Section 2254 allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(I) there is either an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the . rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. Reading subsections (b) and (c) in conjunction, it is clear that Section 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

The court's exhaustion requirements under Section 2254 are explained in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]

To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.

The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted)

Indeed, a claim is unexhausted unless the substance of a petitioner's claims are "fairly presented" to the state courts. The *Matthews* court explained, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not suffice. In other words, fair presentation contemplates that both operative facts and the controlling legal principles must be presented to the state court." *Matthews v. Evatt*, 105 F.3d at 911.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first method involves a direct appeal and, pursuant to state law, a

petitioner is required to state all his grounds in that appeal. *See* SCAR 207 *and Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976). The second method involves the filing of an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. The applicant may allege constitutional violations in a post-conviction relief ("PCR") proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). A PCR applicant is also required to state all of his grounds for relief in his application. *See* S.C. Code Ann. § 17-27-90. Strict time deadlines govern the direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. Significantly, when the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim, <u>unless</u> the petitioner has procedurally bypassed (that is, procedurally defaulted) his state remedies, at which point he would be procedurally barred from raising them in federal court.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *See, e.g., Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977) *and Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983). If a petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d.379 (1982).

### D.  Procedural Default

When the person seeking relief has failed to raise the a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the

issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural default of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Procedural default can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two avenues of appeal in South Carolina are described above; the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Furthermore, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court will usually will honor that bar.

Nevertheless, federal courts do have the power to consider claims despite a state procedural bar, but the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice resulting from the alleged constitutional violation."  *Smith v. Murray*, 477 U.S. 527, 533, *quoting Wainwright v. Sykes*, 433 U.S. at 84.  In other words, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts; and (2) actual prejudice resulting from the failure, the federal court can ignore the procedural bar and consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### E.  The Relationship Between Exhaustion and Procedural Default

If a petitioner in federal court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed (or defaulted) his opportunity for relief in the state courts.  The federal court is barred from

considering the claim, absent a showing of "cause" for the default and "actual prejudice". Under these circumstances, the exhaustion requirement is "technically met" and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997); *cert. denied*, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997), *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *and George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

## F.  Excusing Default

The requirement of exhaustion is not jurisdictional, and a federal court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Cranberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1989).  First, as discussed above, a federal court will review a procedurally defaulted claim if the petitioner "'can demonstrate <u>cause</u> for the default <u>and actual prejudice</u> as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.'" *Matthews v. Evatt*, 105 F.3d at 916, *quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned); *see also Gary v. Netherland*, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).  Conversely, if a petitioner cannot demonstrate both "cause" and "prejudice", the court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir. 2003).

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim.  In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show

interference by state officials. *Murray v. Carrier; Clozza v. Murray*, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); *Clanton v. Muncy*, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. *Hoke v. Netherland*, 92 F.3d 1350, 1354 n. 1 (4th Cir.1996). Moreover, the claim of cause must itself be exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Next, with respect to establishing "actual prejudice," a petitioner generally must show some error. *Tucker v. Catoe*, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000). In addition, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. *O'Dell v. Netherland*, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence. *Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997).

Finally, procedural default is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. at 165-66. It is a habeas petitioner's burden to raise cause and prejudice or actual innocence; if these are not raised by petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171, 116 S.Ct. 1575, 134 L.Ed.2d 673 (1996). With these rules in mind, the court will turn to the issues which Petitioner raises in his Petition for habeas corpus relief.

### **Ground One**

> Whether the trial court erred in admitting evidence relating to blood swab samples recovered from the crime scene and results of DNA analysis when the CHAIN OF CUSTODY of the evidence was incomplete.  (Emphasis in original).

Cocklin first contends that the trial court erred in admitting a blood swab sample from the crime scene and the results of DNA analysis because he believed there was a break in the chain of custody.  This issue was raised in the *Pro Se* Brief of Appellant in the direct appeal (Pages 3, 5-8) and at PCR.  Regardless of whether Petitioner has exhausted this issue, as a threshold matter, this issue is not cognizable in a federal habeas corpus proceeding because it addresses a state court's ruling on the admissibility of the evidence.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  It is "a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts."  *Wainwright v. Sykes*, 433 U.S. at 81, 97 S.Ct. at 2503.

As Chief Judge Soboloff observed over forty years ago in the context of habeas review, "the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues.  It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented.  The role of a federal habeas corpus petition is not to serve as an additional appeal."  *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960).  Indeed, "[a] federal court in a habeas corpus proceeding should be cautious in setting aside the judgment of a state court where that judgment is based on an interpretation of state law.  Where the state law determination is adequate to sustain the state court's decision, the constitutional issue need not be reached.  In such a situation, a federal court should review a state court's decision of a state law issue only where there is reason to suspect that federal rights are being improperly obstructed.  *Sanderson v. Rice*, 777 F.2d 902, 904 (4th Cir. 1985),

*citing Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977);
*Mullaney v. Wilbur*, 421 U.S. 684, 690-91 & n. 11, 95 S.Ct. 1881, 1885-86 & n. 11, 44
L.Ed.2d 508 (1975); *Henry v. Mississippi*, 379 U.S. 443, 446-47, 85 S.Ct. 564, 566-67, 13
L.Ed.2d 408 (1965).

First, with respect to the blood swab samples, "[q]uestions involving the admission of
evidence are largely discretionary with the [state] trial judge." *Sligh v. Johnson*, 288 S.C. 364,
367, 342 S.E.2d 620 (Ct. App. 1986), *citing State v. Atchison*, 268 S.C. 588, 235 S.E.2d 294
(1977). Second, it is well settled law in South Carolina that a "complete chain of evidence
must be established as far *as practicable*, tracing possession from the time the specimen is
taken from the human body to the final custodian by whom it is analyzed." *South Carolina
Dep't of Social Services v. Cochran*, 364 S.C. 621, 628-29, 614 S.E.2d 642 (2005) (emphasis
supplied by the undersigned), *citing State v. Carter*, 344 S.C. 419, 424, 544 S.E.2d 835, 837
(2001).

In the present case, the Court of Appeals dismissed Petitioner's allegations, as set forth
in his *pro se* brief, that the trial court erred when it admitted evidence relating to the blood
swab samples when Petitioner argued that the chain of custody was incomplete. The
admission of the evidence was clearly within the discretion of the trial judge, and thus it may
be argued that no constitutional issue is raised. Likewise, the PCR court dismissed this
argument on the grounds that Cocklin's blood eventually was obtained pursuant to a valid
court order, which made the DNA results admissible at trial. (App. 547) Petitioner's first
ground for habeas relief should be denied.

## Ground Two

Whether the trial court erred in admitting evidence seized from Petitioner's vehicle when there was no reasonable suspicion for initial stop and no probable cause existed to search Petitioner's vehicle.

Next, Petitioner contends that the evidence was improperly seized from his vehicle. This issue was raised in the *Pro Se* Brief of Appellant in the direct appeal, which was dismissed, as well as in PCR. (App. 498)

Petitioner's claim regarding an alleged violation of his Fourth Amendment rights is not cognizable in federal habeas corpus under the rule articulated in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Stone*, Mr. Justice Powell, writing for a 6-3 majority, held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment Claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Stone*, 428 U.S. at 494, 96 S.Ct. 3037.

This court is of the opinion that Cocklin had a "full and fair" opportunity to litigate his Fourth Amendment claim. Cocklin was stopped because he and the car he was driving fit the description of a suspect driving away from a burglarized home in Winnsboro (this burglary was not related to the charges on which Cocklin was tried). The police recovered items from the car, after a search incident to arrest, which belonged to the victims of the burglary charge at issue in this Petition. Petitioner argued that his attorney was ineffective for failing to challenge the stop as pretextual, because no stolen items from the unrelated incident were recovered from the car.

The record reveals that at trial, there was an *in camera* proceeding to address the legality of the stop and search of the vehicle. (App. 244-281) Captain Eric Gill testified that on June 2, 2000 he received a "be on the lookout" or "BOLO" for a black mustang with a license tag bearing the last three letters DKZ. He learned that one of the officers had seen the vehicle on highway 321 and then Gill saw the vehicle. (App. 246-247) Gill turned and

activated his blue lights and stopped the vehicle at Big Chick Restaurant.  From his dispatch, Gill was aware that there had just been a burglary off highway 34 west.  About 20 minutes after the stop, he spoke with Investigator Anderson who asked him what the suspect was wearing; he advised him "purple jeans and a black tee-shirt.  (App. 248)  At that time, he detained Petitioner at the stop. (App. 248)

It was developed from the BOLO that there initially was a report that a young black male jumped from the roof of a residence onto the ground, got into a newer model Ford and left the residence at a high rate of speed.  (App. 250)  The information was then supplemented from a report by Deputy Glenn, who spotted the vehicle in response to the BOLO and the license information and pulled the Ford over in the Big Chick parking lot.  (App. 251, 258-60)  Gill testified that when he got to the vehicle, he asked the driver (Cocklin) for his driver's license, but did not inform him of the reason for the stop.  (App. 260)  Investigator Anderson appeared at the scene, and another officer came and took Cocklin in his possession and detained him in the vehicle.  (App. 260-263).

Investigator Anderson testified that on that date he was investigating the burglary at the Ashworth residence where there had been a report of someone jumping off a roof.  While at the scene he collected purple colored fibers from an open window.  (App. 266)  He later learned the Cocklin had been stopped, Cocklin was wearing purple jeans, and Anderson called Captain Gill on the cell phone or radio.  He confirmed that he asked him what the suspect was wearing because he had found purple fibers.  (App. 267)  Based on this information, Anderson finished up at the Ashworth crime scene, went to the Big Chick restaurant and directed that the car be impounded.  Ms. Mosby was found to be the owner of the vehicle.  (App. 268-269)  He testified that he spoke to Ms. Mosby, asked whether he could inventory the contents of the car, and Ms. Mosby agreed to the inventory.  (App. 269-271).  Anderson inventoried the impounded vehicle on June 2, 2000, within two to three hours after the stop.  (App. 270-271)  He explained that the vehicle was not searched until the afternoon of June 2, while the car was

in the impound lot and they did the inventory so they could release it to Ms. Mosby.  (App. 274-275)  On re-direct, Anderson testified that the call on the Ashworth burglary came in at 8:30 a.m.; the car was impounded at 9:48 a.m.; and Cocklin was booked at 10:30 a.m.  (App. 276-278)  He noted that there was a report that he took the Reebok shoes, jeans, and a red tuomey bag from the vehicle at 10:30 a.m.  (App. 279-280)

Based on this testimony, the court denied the motion to suppress the evidence, explaining: "It appears that the evidence was acquired as a result of a legal search, and that search accompanied the consent of the owner of the vehicle.  In addition the search was incident to an arrest, and in addition there was an inventory search as a result, so there were several grounds which would justify the search and seizure of the evidence in question; therefore, the defense motion is denied."  Thereafter, the jury was brought in to the courtroom. (App. 281)

The trial court's decision is consistent with established South Carolina law.  An officer may stop and briefly detain the occupants of a car without treading on Fourth Amendment rights, even without probable cause to arrest, if he has a reasonable suspicion that the occupants are involved in criminal activity. *Sikes v. State*, 323 S.C. 28, 30-31, 448 S.E.2d 560, 562 (1994); *Knight v. State*, 284 S.C. 138, 141, 325 S.E.2d 535, 537 (1985).  "'[A] policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke that suspicion.'"  *State v. Nelson*, 336 S.C. 186, 192, 519 S.E.2d 786, 789 (1999), *quoting Berkeley v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

In his APCR and the subsequent evidentiary hearing, Petitioner testified that his trial counsel should have moved to exclude the results of that stop and search on the grounds that it was a warrantless search.  However, Petitioner had conceded in his Application that counsel moved to suppress some of the items that were gathered when Petitioner was stopped, on the

grounds of insufficient identification, and second that counsel had moved to suppress based on the lack of probable cause for the stop.  (App. 498).  Although Petitioner testified during the hearing that counsel had moved to suppress this evidence at trial, he further claimed his attorney was ineffective because he had failed to argue that there were no stolen items from the unrelated incident in the car.  (App. 513-514)  In response, trial counsel testified: "We made all of the motions that we could on suppression."  (App. 533-534)  He further testified: "I filed a motion to suppress and I renewed the motion to suppress and it was denied."  (App. 540)  The PCR judge held that there were no grounds to invalidate the stop or arrest, and no facts that would give rise to grounds to suppress the evidence found incident to the arrest.  (App. 546-547)

In the present case, it is abundantly clear that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim at trial.  Therefore, Petitioner cannot be granted federal habeas corpus relief on the ground.  *See Stone*, 428 U.S. at 494, 96 S.Ct. 3037.

### Ground Three

Defense counsel failed to provide effective assistance under *Strickland v. Washington* when he neglected to object to testimony that Petitioner initially refused to provide police with a blood sample because he wanted his lawyer present.

This issue was raised in the PCR proceedings and fully exhausted by its presentation to the South Carolina Supreme Court in the Petition for a writ of certiorari.  Petitioner alleges that his attorney was ineffective because he failed to object to testimony by Investigator Boney that Petitioner had initially refused a blood test because he wanted his attorney to be present.  (App. 514-517)

At trial, Investigator Boney testified that two swabs of blood had been taken from the crime scene.  (App. 165)  It was anticipated that they would be sent to SLED for DNA testing, but a sample from Cocklin was needed in order to perform a comparison.  Investigator Boney testified without objection that he obtained a search warrant for Petitioner's blood but the

warrant was not executed because Petitioner wanted to speak with his attorney.  (App. 163-164)

Trial counsel cross-examined Boney regarding the delay between arrest and the first request for Petitioner's blood sample; Boney testified that it was not unusual for individuals to dislike having blood drawn.  (App. 176-179)  During trial counsel's direct examination of Petitioner, trial counsel elicited an explanation from Petitioner concerning his initial reluctance to provide the blood sample:  Petitioner explained that approximately four months passed between his arrest and the initial request for a blood sample and that he was asked to meet with officers one evening for what he thought would be a discussion about the case.  However, Petitioner was taken to the hospital for the blood test.  Petitioner had met with his attorney the day before but nothing had been mentioned about a blood sample.  Therefore, Petitioner testified that he asked for his attorney to be present when the blood sample was taken.  (App. 367-369)  Petitioner's testimony appears to explain his reluctance to provide a blood sample, many months later, without having his attorney present.

Petitioner claimed in his APCR and in his testimony at the evidentiary hearing that he received ineffective assistance of trial counsel when counsel failed to object to Investigator Boney's testimony that Petitioner initially refused to provide a blood sample.  In his APCR, and during the APCR hearing, Petitioner contended (1) that Investigator Boney's testimony suggested he refused to cooperate, and therefore Petitioner's rights under the Fourth Amendment were violated; and (2) trial counsel's failure to object to the Investigator Boney's testimony denied Petitioner his right to a fair trial.  (App. 501; 514-516)

At the PCR hearing, trial counsel admitted that he failed to object when the Solicitor commented on Petitioner's initial refusal to give a blood sample pursuant to the search

warrant.[7]  He stated: "I just failed to object."  He speculated that in retrospect, his failure to object might have had an impact on the jury.  (App. p. 541-542)

The post-conviction relief court rejected Petitioner's claim that trial counsel provided ineffective assistance in this regard.  Specifically, the state PCR court found:

> During the testimony of Fairfield County Investigator Greg Boney he indicated that the Applicant refused to give a blood sample the first time he was taken to the hospital.  Eventually a court order was obtained, and the Applicant gave a blood sample.  The Applicant's DNA matched the blood found in the victims' home.  The Applicant claimed counsel was ineffective for failing to object to Boney's testimony that he initially refused to give a blood sample.  He claimed it was an improper comment on his right to remain silent.  While Boney's comment may have been objectionable, this Court finds no reasonable probability the outcome of the Applicant's trial would have been different had an objection been made and the testimony stricken.  The Applicant's blood was eventually obtained pursuant to a valid court order.  Thus, the DNA results were going to be admissible regardless.  Any improper inference that could be taken from Boney's testimony was much less damaging tha[n] the Applicant's implausible explanation for being in the area in possession of stolen items and his lack of an explanation for how his blood ended up in the victims' home.  (App. 547)

As a threshold matter, to the extent that this conclusion represents a State court factual finding, it is presumed to be "correct", absent an applicant's showing of clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

With respect to whether Petitioner's trial counsel provided effective assistance of counsel, this Court's analysis will focus on whether the state courts properly applied the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Williams v. Taylor*, 529 U.S. 362 (2000) (The "*Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")  In *Strickland*, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.  To meet the first requirement, "[t]he defendant must show that counsel's

---

[7]    At the time the search warrant was issue, Petitioner was represented by another attorney.  Mr. Fantry later was appointed to represent Petitioner.  (App. 541)

representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at

688. "The proper measure of attorney performance remains simply reasonableness under

prevailing professional norms." *Turner v. Bass*, 753 F.2d 342, 348 (4th Cir. 1985), *quoting*

*Strickland*, *(reversed on other grounds*, 476 U.S. 28 (1986)).  In meeting the second prong of

the inquiry, a complaining defendant must show that he was prejudiced by the error.

*Strickland* requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Strickland,* 466 U.S. at 694-95.

Of course, "[i]t is improper for the State to refer to or comment on a defendant's

exercise of a constitutional right.  Such comments may not be made either directly or

indirectly[.]  In particular, the State may neither comment upon nor present evidence at trial of

a defendant's decision to exercise his right to remain silent or be represented." *Edmund v.*

*State*, 341 S.C. 340, 534 S.E.2d 682 (2000).  In the present case, the State PCR court correctly

cited and applied the *Strickland* test to the facts at bar.  When an applicant alleges his counsel

provided ineffective assistance for failing to object to the State's improper comments or

testimony respecting Petitioner's exercise of a constitutional right, Petitioner must show that

counsel's failure to object to the comment prejudiced him.  *Edmund v. State*, 341 S.C. 340,

534 S.E.2d 682 (2000).  The prejudice prong of the PCR analysis runs parallel to the harmless

error analysis applied in a direct appeal.  *McFadden v. State*, 342 S.C. 637, 539 S.E.2d 391

(2000).  The evidence clearly supports the PCR court's reasonable application of *Strickland*

when it found that Petitioner failed to show that he was prejudiced by the testimony such that

there was a reasonable probability the outcome of the trial would have been different had counsel objected.

As discussed above, the testimony in question was a single reference by Investigator Boney, who volunteered the information without a direct question from the solicitor. The information was not revisited by the State in any other manner during trial, either by examination of witnesses or in its closing argument to the jury. The solicitor did not tie the request for counsel before providing the blood sample to Petitioner's exculpatory story. Petitioner also provided the jury with a reasonable explanation for the reason he wanted to speak with counsel or have counsel present before the sample was obtained. Furthermore, in light of Petitioner's failure, when he testified, to provide any reason whatsoever as to why his blood was found in the victims' home on the day of the burglary and of the implausible explanation of his whereabouts, there was no showing the jury may have used the improper testimony to infer Petitioner's guilt simply because he had asked for counsel before providing a blood sample.

The evidence at trial also support the PCR court's conclusion that the outcome of Petitioner's trial was not affected by the testimony. The evidence presented at trial showed that during the early morning of May 18, the victims' neighbor observed a dark blue or black vehicle traveling swiftly in and out of her driveway. Her home is not visible from the main road and the neighbor was working in her yard when she noticed the vehicle. (App. 119-123) The victims had left their Fairfield County home shortly before the neighbor observed the dark car and returned home late that afternoon to find a window broken and the home ransacked. The victims contacted law enforcement officers. Responding officers found a broken window in the master bedroom with glass on the floor inside the home near the window. Officers also found blood inside the home and retrieved a sample of the blood for testing. The victims provided a description of stolen items to the officers. (App. 95; 105; 132; 137)

A few weeks later, on June 2, Petitioner was stopped in Fairfield County.  Petitioner was driving a dark vehicle.  Officers found items in the vehicle which were identified by the victims as stolen from their home on May 18.  Subsequently, Petitioner's blood sample was obtained and DNA testing revealed that the blood found in the victims home was Petitioner's blood.  (App. 154-156, 162; 105-110; 207-210; 313; 163; 166; 202; 203; 306; 308)

Petitioner took the stand and testified in his defense, against the advice of his trial attorney.[8]  He testified that he resided in Sumter, South Carolina and made his living as a peddler.  He claimed he purchased the items stolen from the victims' home at a flea market. He explained that he was in Fairfield County on June 2 on a property matter and that he made several stops that day, became lost and pulled his car off the road when he became ill.  He offered no explanation for his blood in the victims' home.  (App. 350–421).

The PCR court correctly found, based on the evidence, that the Petitioner failed to carry his burden to show there was a reasonable probability the outcome of the trial would have been different had a mistrial been requested.  *Johnson v. State*, 325 S.C. at 182, 480 S.E.2d at 733.  Therefore, the Petitioner failed to carry his burden of showing prejudice from the allegedly  deficient representation.

Moreover, Investigator Boney's testimony was not an improper comment on Petitioner's right to remain silent.  Boney's testimony related to Petitioner's refusal to submit to a blood sample.  This Court and the United States Supreme Court have determined that such matters are non-testimonial in nature and are not objectionable.  *See Schmerber v. California*, 384 U.S. 757 (1966) (holding that withdrawal of blood does not implicate the Fifth Amendment); *State v. Frasier*, 341 S.C. 546, 534 S.E.2d 711 (2000) (a handwriting exemplar is a physical characteristic outside the protection of the Fifth Amendment privilege against

---

[8]    Trial counsel testified at the PCR hearing "[O]ne of the things that I felt hurt in this particular trial–though I asked Mr. Cocklin not to get on the stand–was his insistence on getting on the stand."  (App. 538)

self-incrimination); *State v. Nathari*, 303 S.C. 188, 399 S.E.2d 597 (1990) (finding State's comment on defendant's refusal to submit to a urine test does not violate defendant's right against self-incrimination as use of blood or urine test is nontestimonial); *State v. Jones*, 268 S.C. 227, 233 S.E.2d 287 (1977) (holding no violation of privilege against self-incrimination when defendant is compelled to speak words in a lineup); *State v. Miller*, 257 S.C. 213, 185 S.E.2d 359 (1971) (finding testimony that defendant refused to submit to a breathalyzer test did not violate defendant's privilege against self incrimination); *State v. Smith*, 230 S.C. 164, 94 S.E.2d 886 (1956) (same).  Since the testimony was not improper, trial counsel's failure to object to it cannot be deficient representation.  *See Strickland v. Washington*, 466 U.S. at 668. Accordingly, it is recommended that Petitioner's third ground for habeas relief should be denied.

## Ground Four

Petitioner denied "Due Process."

Petitioner's final ground for relief is set forth as a free-standing due process claim:  he alleges he was stopped because he was a black man driving a black car.  For the first time, Petitioner asserts that he was subject to a "pat down" and arrested without being informed of his *Miranda* rights, and interrogated by officers who threatened and tried to coerce him into making a plea.  He also contends that, without being served with a warrant, he had all his clothes taken from him while at the Detention Center.

Petitioner is procedurally barred from making this free-standing claim for the first time in this setting.[9]  Petitioner admits he did not raise this claim in direct appeal nor in the state PCR court.  This claim is not properly before this court, as it has not been "fairly presented" during state proceedings.  *George v. Angelone*, 100 F.3d 353, 362 (4th Cir. 1996).  The

---

[9]         The Applicant also complains that his counsel failed to raise this claim, but has put forth no evidence that counsel the claims, but has not proven counsel's ineffectiveness on this issue.

Petitioner's claim is procedurally defaulted because he failed to take his claim to the highest state court (*Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)), and the state court now would refuse to review the claim. *Teague v. Lane*, 489 U.S. 288, 298 (1989).

As discussed above, there are two exceptions to the general rule of procedural default. A habeas petitioner can overcome a procedural default by showing either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50, 111 S.Ct. at 2564-65. Even if Petitioner had set forth a viable claim under federal law, A review of the Petitioner's argument in support of Ground Four reveals that he does not make any showing of cause and prejudice for the procedural failure. Furthermore, Petitioner does not contend that the "fundamental miscarriage of justice" exception applies, and the undersigned accordingly will not address such a possibility. The court recommends that Petitioner's Ground Four be denied and dismissed.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[14-1] should be granted,** and that Cocklin's Motion for Summary Judgment **[17-1] be dismissed.**

/s/ George C. Kosko
George C. Kosko
United States Magistrate Judge

September 29, 2006

Charleston, South Carolina

<u>**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**</u>
<u>**& The Serious Consequences of a Failure to Do So**</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has**
> **the same effects as would a failure to object.  The district court's attention is not**
> **focused on any specific issues for review, thereby making the initial reference to**

> **the [magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \* \* \* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating**
>
> **only 'I object' preserves no issue for review. \* \* \* A district judge should not**
>
> **have to guess what arguments an objecting party depends on when reviewing a**
>
> **[magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").    **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
