IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Charles A. Cocklin, # 237667, ) | |
| ) | |
| Petitioner, ) | |
| ) | C.A. No.: 9:06-1475-PMD-GCK |
| v. ) | |
| ) | **ORDER** |
| George T. Hagan, Warden; and ) | |
| Henry McMaster, Attorney General ) | |
| of the State of South Carolina, ) | |
| ) | |
| Respondents. ) | |
| _____) | |

This matter is before the court upon Petitioner Charles A. Cocklin's ("Petitioner" or "Cocklin") petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1). The Magistrate Judge's R&R recommends that Respondents' Motion for Summary Judgment be granted and that Cocklin's Motion for Summary Judgment be dismissed. A party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Cocklin filed timely objections to the R&R.

## **BACKGROUND**

On April 16-18, 2001, Cocklin had a jury trial in Winnsboro, South Carolina, on the charges of burglary in the second degree and grand larceny. The jury found Cocklin guilty on both charges, and on April 19, 2001, Judge Beatty sentenced Cocklin to confinement for fifteen years for second degree burglary with credit for time served and thirty days for petit larceny, again with credit for

1

time served.[1]  (App. 328.)

Cocklin filed a timely notice of appeal before the South Carolina Supreme Court, and Assistant Appellate Defender Robert M. Pachak filed an *Anders*[2] Brief of Appellant on February 13, 2002.  Cocklin's counsel raised one issue for review:

> Whether the trial court erred in allowing appellant to be impeached with prior grand larceny convictions when they were too similar to the grand larceny charge for which appellant was on trial and they caused the probative value of the prior convictions to be outweighed by their prejudicial effect?

Thereafter, on March 21, 2002, Cocklin filed a *pro se* brief in which he raised two issues for review:

> Whether the trial court erred in admitting evidence relating to blood swab samples recovered from the crime scene and results of DNA analysis conducted when the chain of custody of the evidence was incomplete?

> Whether the trial court erred in admitting evidence seized from Appellant's vehicle when there was no reasonable suspicion for the initial stop and no probable cause existed to search Appellant's vehicle?

On September 12, 2002, the South Carolina Court of Appeals dismissed Cocklin's appeal

---

[1] Magistrate Judge Kosko noted,
The indictment for grand larceny alleged that the property was valued at more than $200.00.  The statute was changed after that form was used.  The attorneys and the trial judge agreed that there was a jurisdictional problem with the indictment and the judge changed the charge to petit larceny with the consent of defense counsel, who waived presentment.  (App. 485-486.)
(R&R at 3.)

[2] As the Magistrate Judge stated in his R&R,
*Anders*[, 386 U.S. 738 (1967),] requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited.  *See Anders*, 386 U.S. at 744.  *See also Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988).
(R&R at 3.)

pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991), and the court also granted counsel's petition to be relieved in the matter. The Order of Remittitur was sent to the trial court on October 22, 2002.

Cocklin filed an application for post-conviction relief ("PCR") in the Court of Common Pleas of Fairfield County on October 4, 2002. (App. 491-502.) In his application, Cocklin stated the ground on which he alleges he is being held in custody unlawfully is that he received ineffective assistance of counsel. First, Petitioner argues his counsel was constitutionally ineffective, caused him prejudice, and denied him a fair trial because his counsel failed to act appropriately during voir dire. Petitioner claims trial counsel was ineffective when he did not ask the court to strike the entire panel after one potential juror stated during voir dire, "I believe this is the gentleman who broke into my mother's house." Furthermore, Petitioner states his counsel was ineffective for failing to ask whether anyone had any information on the case that had been discussed via the Internet by Petitioner's former counsel.

Second, Petitioner argues counsel was ineffective in that counsel should have stricken panel members who were biased in favor of the prosecution, and as a result of failing to strike these members, Petitioner was denied the right to a trial by a fair and impartial jury.

Third, Cocklin argues his trial counsel was constitutionally ineffective because counsel made an ineffective argument to the court in the motion to suppress evidence obtained through an illegal stop and search.

Fourth, Petitioner asserts his counsel was constitutionally ineffective because counsel made an ineffective argument to the court in the motion to suppress evidence based on the lack of proof of proper chain of custody of the evidence. Petitioner asserts both the blood swabs collected at the

crime scene and a blood sample taken from him should be suppressed based on a break in the chain of custody of this evidence.

Fifth, Petitioner says his counsel was ineffective in failing to invoke Rule 5(a)(1)(D) of the South Carolina Rules of Criminal Procedure to request and acquire the DNA proficiency test results of SLED Agent Ortuno, who testified at trial. Cocklin asserts the proficiency test results should have been obtained since his counsel had the right to cross-examine Agent Ortuno as to his performance on those proficiency tests.

Sixth, Cocklin asserts his trial counsel was constitutionally ineffective in failing to object to testimony that Cocklin initially refused to consent to giving a blood sample without his attorney being present. Further testimony revealed that a court order was necessary to obtain the blood sample from Petitioner.

Petitioner lastly asserts that counsel was ineffective in failing to present Nancy Mosby, Petitioner's girlfriend at the time, as an alibi witness.

On September 10, 2003, the Honorable Kenneth G. Goode held an evidentiary hearing at the Fairfield County Courthouse in Winnsboro, and on September 29, 2003, Judge Goode entered his written Order of Dismissal denying relief in the matter. On April 21, 2004, Petitioner appealed to the South Carolina Supreme Court from the denial of PCR by filing a petition for writ of certiorari. In the petition, Cocklin asserted one ground for relief: "Defense counsel failed to provide effective assistance under *Strickland v. Washington*[, 466 U.S. 668 (1984),] when he neglected to object to testimony that Cocklin had initially refused to provide the police with a blood sample because 'he wanted to talk to his attorney first.'" On March 28, 2006, the South Carolina Court of Appeals entered a letter order stating, "Petition for Writ of Certiorari Denied." The mandate was issued on

April 14, 2006. No petition for rehearing in the South Carolina Court of Appeals or petition for writ of certiorari to the South Carolina Supreme Court was taken.

Cocklin is currently confined in the Allendale Correctional Institution of the South Carolina Department of Corrections. Cocklin filed a petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254 on May 11, 2006. The Petition set forth four grounds for relief:

> 1. Whether the trial court erred in admitting evidence relating to blood swab samples recovered from the crime scene and results of DNA analysis when the chain of custody of the evidence was incomplete.
>
> 2. Whether the trial court erred in admitting evidence seized from Petitioner's vehicle when there was no reasonable suspicion for [the] initial stop and no probable cause existed to search Petitioner's vehicle.
>
> 3. Defense counsel failed to provide effective assistance under *Strickland v. Washington* when he neglected to object to testimony that Petitioner initially refused to provide police with a blood sample because he wanted his lawyer present.
>
> 4. Petitioner denied "Due Process."

(Cocklin's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.) On August 7, 2006, Respondents filed a Return, a Motion for Summary Judgment, and a Memorandum of Law in Support of the Motion for Summary Judgment. On September 5, 2006, Cocklin filed a Motion for Summary Judgment, a Memorandum of Law in Support of his Motion for Summary Judgment, and a Response in Opposition to Respondents' Motion for Summary Judgment. Magistrate Judge Kosko issued an R&R on September 30, 2006, recommending that Respondents' Motion for Summary Judgment be granted and that Cocklin's Motion for Summary Judgment be dismissed.

## **STANDARD OF REVIEW**

### A.     **Legal Standard for Summary Judgment**

To grant a motion for summary judgment, this court must find that "there is no genuine issue

as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 124 (4th Cir. 1990).

### B.     Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Petitioner's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted to the extent not inconsistent with this Order.

## ANALYSIS

### A.     Section 2254 Petitions

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if a petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue

made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

"The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

### B. Objections

While the court has some difficulty understanding Petitioner's arguments, the court reads his objections to the R&R broadly. Cocklin raises two objections to the Magistrate Judge's R&R.

### 1.  Objection 1: The Magistrate Judge erred in concluding that Cocklin had a full and fair opportunity to litigate his Fourth Amendment claim in state court.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 481-82; *see also Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).  After making the "'opportunity' inquiry, [the district court] need not inquire further into the merits of the petitioner's case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired."  *Doleman*, 579 F.2d at 1265.

In the R&R, the Magistrate Judge noted that at Cocklin's trial, Judge Beatty held an *in camera* proceeding to address the legality of the stop and search of the vehicle.  (App. 244-81.)  At this proceeding, Captain Eric Gill and Investigator Anderson testified.  Captain Gill testified that on June 2, 2000, he received a "be on the lookout" or "BOLO" for a black mustang with a license tag bearing the last three letters DKZ.  (App. 246.)  He learned that one of the officers had seen the vehicle on highway 321.  Captain Gill then saw the vehicle and stopped it.  He was aware that a burglary had just occurred off highway 34 west, and he detained Petitioner at the stop after speaking with Investigator Anderson and telling Anderson that Petitioner was wearing "purple jeans and a black t-shirt."  (App. 247-48.)

During the *in camera* proceeding, further testimony revealed the initial report stated that a young black male jumped off the roof of a residence onto the ground, got into a newer model Ford, and left the residence at a high rate of speed.  (App. 250.)  This information had been supplemented by an officer who had seen a vehicle matching the description, and this officer said the license tag

8

bore the letters DKZ.  (App. 251, 258-60.)

Investigator Anderson testified that on June 2, 2000, he was investigating the burglary at the Ashworth residence where there had been a report of someone jumping off a roof.  While at the scene, Investigator Anderson collected purple-colored fibers from an open window.  (App. 266.) After confirming that Cocklin was wearing purple jeans, Investigator Anderson went to the scene of the stop and directed that the car be impounded.  (App. 268.)  Anderson spoke with Ms. Mosby, the owner of the vehicle, and obtained her permission to inventory the car.  (App. 270-71.)

Based on the *in camera* testimony, the trial court denied Cocklin's motion to suppress the evidence:

> The court will deny the motion to suppress the evidence.  It appears that the evidence was acquired as a result of a legal search, and that search accompanied the consent of the owner of the vehicle.  In addition the search was incident to an arrest, and in addition there was an inventory search as a result, so there were several grounds which would justify the search and seizure of the evidence in question; therefore, the defense motion is denied.

(App. 281.)

In addition to raising the Fourth Amendment issue in the trial court, Cocklin raised this issue in his direct appeal to the South Carolina Court of Appeals.  Likewise, in his PCR application, he alleged he was denied effective assistance of counsel because his attorney made an ineffective argument to the court regarding the motion to suppress evidence obtained through the illegal stop and search of Petitioner.

In the R&R, the Magistrate Judge found Cocklin had a full and fair opportunity to litigate his Fourth Amendment claim, and this court agrees with the Magistrate Judge.  Cocklin had the opportunity to litigate, and did in fact litigate, the Fourth Amendment issue in state court.  There

were over thirty pages of testimony from the *in camera* proceeding in which Petitioner had the opportunity to cross-examine both Captain Gill and Investigator Anderson. (App. 245-81.) Furthermore, Cocklin raised this issue on direct appeal, and the South Carolina Court of Appeals dismissed his appeal. In his PCR proceeding, Cocklin argued his counsel was ineffective for making an ineffective argument regarding his Fourth Amendment claim, but Judge Goode denied relief.

Despite his objection, there is simply no indication that Petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claim. *See Boggs v. Bair*, 892 F.2d 1193, 1200 (4th Cir. 1989) (noting that "[a] more full and fair hearing in the trial court could not have been had" when the hearing on the motion to suppress took up 130 pages of the appendix and testimony was offered by both sides); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) (finding *Stone v. Powell* applicable when petitioner "had an opportunity to litigate the introduction of the evidence at his probation revocation hearing" because "he vigorously sought its suppression," the trial court ruled against him, and the trial court's ruling was affirmed on appeal). Because Cocklin had a full and fair opportunity to litigate his Fourth Amendment claim in state court, his objection is without merit.

### 2. Objection 2: The Magistrate Judge erred in finding the state court properly applied *Strickland v. Washington* in determining whether Petitioner was denied effective assistance of counsel.

In his § 2254 petition, Cocklin's third ground for relief is that defense counsel failed to provide effective assistance of counsel by neglecting to object to testimony that Petitioner initially refused to provide police with a blood sample because he wanted his lawyer present. In the R&R, the Magistrate Judge held (1) that the state court properly applied the test from

10

*Strickland v. Washington* and (2) that Investigator Boney's testimony regarding Petitioner's refusal to submit to a blood sample was not an improper comment on his right to remain silent. (R&R at 25-27.)[3]

At trial, Investigator Boney testified that some blood samples had been taken from the crime scene. (App. 162.) It was anticipated that they would be sent to SLED for DNA testing, but a sample from Cocklin was needed in order to perform a comparison. (App. 165.) Investigator Boney testified without objection that he obtained a search warrant for Petitioner's blood but the warrant was not executed because Petitioner wanted to speak with his attorney. (App. 163-64.) During cross-examination, Investigator Boney testified that it was not unusual for individuals to dislike having blood drawn. (App. 176-79.) Petitioner testified at his trial, and during his direct examination, his counsel elicited an explanation regarding his initial reluctance to provide the blood sample: Petitioner explained that approximately four months passed between his arrest and the initial request for a blood sample and that he was asked to meet with officers one evening for what he thought would be a discussion about the case. However, Petitioner was taken to the hospital for the blood test. Cocklin had met with his attorney the day

---

[3]This court is uncertain whether Petitioner is arguing Investigator Boney's comment violated Petitioner's Fourth or Fifth Amendment rights. In his order dismissing Cocklin's PCR application, Judge Goode stated Cocklin "claimed [the comment] was an improper comment on his right to remain silent." (App. 547.) However, in his PCR application, Cocklin stated, "Since the taking of a blood sample is a search of that person the protections of the federal constitution applies [sic]. Testimony presented to the jury that Applicant refused to cooperate violates the provisions established by the Fourth Amendment to the United States Constitution." (App. 501.) This court does not address the potential distinction, as Petitioner cannot establish prejudice pursuant to *Strickland*. Likewise, because prejudice is lacking, this court does not find it necessary to address the Magistrate Judge's determination that Investigator Boney's testimony regarding Petitioner's refusal to submit to a blood sample was not an improper comment on his right to remain silent.

before, but his attorney said nothing about a blood sample.  Petitioner thus testified that he asked for his attorney to be present when the blood sample was taken.  (App. 367-69.)  His testimony appears to explain his reluctance to provide a blood sample without having his attorney present.

In his PCR application, Cocklin claimed he received ineffective assistance of counsel because counsel failed to object to Investigator Boney's testimony that Petitioner initially refused to provide a blood sample.  More specifically, he contended (1) that Investigator Boney's testimony suggested he refused to cooperate, and therefore Petitioner's rights under the Fourth Amendment were violated and (2) trial counsel's failure to object to Investigator Boney's testimony denied Petitioner his right to a fair trial.  (App. 501; 514-16.)

At the PCR hearing, Cocklin's trial counsel admitted he failed to object when the Solicitor commented on Petitioner's initial refusal to give a blood sample; counsel stated, "I just failed to object."  (App. 542.)  When asked whether that failure may have done some damage in the course of the trial in the eyes of the jury, counsel responded, "It's speculation, but in retrospect it may have."  (App. 542.)

The PCR court denied relief and stated,

> During the testimony of . . . Investigator Greg Boney he indicated that the Applicant refused to give a blood sample the first time he was taken to the hospital.  Eventually a court order was obtained, and the Applicant gave a blood sample.  The Applicant's DNA matched the blood found in the victims' home.  The Applicant claimed counsel was ineffective for failing to object to Boney's testimony that he initially refused to give a blood sample.  He claimed it was an improper comment on his right to remain silent.  While Boney's comment may have been objectionable, this Court finds no reasonable probability the outcome of the Applicant's trial would have been different had an objection been made and the testimony stricken.  The Applicant's blood was eventually obtained pursuant to a valid court order.  Thus, the DNA results were going to be admissible regardless.  Any improper inference that could be taken from Boney's testimony was much less damaging tha[n] the Applicant's implausible explanation for being

> in the area in possession of stolen items and his lack of an explanation for how his blood ended up in the victims' home.

(App. 547.)

In his R&R, the Magistrate Judge determined the "PCR court correctly found, based on the evidence, that the Petitioner failed to carry his burden to show there was a reasonable probability the outcome of the trial would have been different had a mistrial been requested." (R&R at 27.)  *Strickland v. Washington*, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense.  *Id*. at 687-96.  A court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance.  *Id*. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id*. (internal quotation marks and citation omitted); *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985).

This court agrees with the Magistrate Judge and finds Petitioner is not entitled to relief because the state court's adjudication of this claim did not (1) result in a decision contrary to, or involving an unreasonable application of, clearly established federal law or (2) result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d).  Assuming that Petitioner can demonstrate counsel's performance was deficient, Cocklin has failed to demonstrate the second prong of

*Strickland*, prejudice. "To show prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability the result of the trial would have been different." *Patrick v. State*, 349 S.C. 203, 207, 562 S.E.2d 609, 611 (2002); *see also Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Given the fact that Petitioner's DNA matched the DNA found at the crime scene, there is no reasonable probability the result of the trial would have been different had counsel objected to, and the court stricken, Investigator Boney's statement. Furthermore, when Petitioner testified, he did not provide any reason as to why his blood was found in the victims' home on the day of the burglary. Petitioner has thus failed to make the requisite showing that there is a reasonable probability the result of his trial would have been different but for counsel's error. Accordingly, Petitioner's objection is without merit.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Respondents' Motion for Summary Judgment is granted. It is further **ORDERED** that Cocklin's Motion for Summary Judgment is dismissed.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**December 4, 2006**

14